UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PRIVATE CLIENT FIDUCIARY CORPORATION, a Washington Corporation, as Guardian and Conservator of JOGINDER CHOPRA, M.D., an Incapacitated Person,<br><br>Plaintiff,<br>v.<br><br>PHAM SINGH CHOPRA, et al.,<br><br>Defendants. | CASE NO. 22-CV-00436-LK<br><br>ORDER GRANTING IN PART AND DENYING IN PART PHAM CHOPRA'S MOTION TO DISMISS |

Before the Court is Defendant Pham Singh Chopra's Motion to Dismiss. Dkt. No. 15. The Court grants in part and denies in part the motion.

I.     BACKGROUND

In June 2016, Joginder Chopra appointed her brother Pham Chopra to serve as her attorney-in-fact through an instrument titled "General Durable Power of Attorney of Joginder G. Chopra, M.D." Dkt. No. 1 at 3; *see id.* at 11–30. This instrument vested Mr. Chopra with the authority to "invest and reinvest all or any part of [Dr. Chopra's] property in any other property of whatever

type: real or personal, tangible or intangible," a power that encompassed discretion to "invest in securities of all kinds"; "sell or otherwise terminate any investment made by [Dr. Chopra] or on [her] behalf"; "establish and terminate accounts with securities brokers and use brokerage accounts to make short sales and to buy on margin"; and "hire and fire financial and investment advisors." *Id.* at 14. The Durable Power of Attorney further granted Mr. Chopra authority to "exercise all rights regarding securities" that Dr. Chopra owned then or in the future. *Id.* at 16. Specifically, he could "buy, sell, and exchange all types of securities and financial instruments including stocks, bonds, mutual funds, and commodity futures contracts and call and put options on stocks and stock indexes." *Id.*

Dr. Chopra "experienced a steep and continuous cognitive decline" following her execution of the Durable Power of Attorney. *Id.* at 3. She also suffered a stroke in November 2018, which resulted in "aphasia, further cognitive impairment, vertigo, poor concentration, and anhedonia." *Id.* Between January and February 2019, Mr. Chopra initiated multiple transfers of cash and stock from Dr. Chopra's Fidelity account to his personal Fidelity account and to that of Akal Institute. *Id.* at 3–4.[1] The value of the transferred assets totaled $23,598,340.39. *Id.* at 3–4; *see also* Dkt. No. 15 at 3 (table identifying and totaling transferred assets).

Adult Protective Services began investigating allegations against Mr. Chopra for financial exploitation of Dr. Chopra—allegations that were ultimately substantiated. Dkt. No. 1 at 4; *see* Wash. Rev. Code § 74.34.067 (setting forth Adult Protective Services investigation procedure). He resigned as attorney-in-fact in October 2020. Dkt. No. 1 at 4, 32–33. And in August 2021, the King County Superior Court appointed Private Client Fiduciary Corporation as the guardian of Dr. Chopra and her estate. *Id.*; *see also In Re Joginder Chopra*, No. 21-4-03546-2-SEA (King County

---

[1] Chopra is president of Akal Institute. Dkt. No. 1 at 2.

Superior Court). The court further ordered Mr. Chopra to return all funds from his personal Fidelity account and that of Akal Institute to Private Client (as Dr. Chopra's guardian). Dkt. No. 1 at 4. The resulting transfer included cash and stocks totaling $50,684,890.90. *Id.* at 4–6; *see also* Dkt. No. 15 at 4 (table identifying and totaling transferred assets).

In April 2022, Private Client sued Mr. Chopra and Akal Institute for breach of fiduciary duty, unjust enrichment, and conversion. Dkt. No. 1 at 6–8. The complaint alleges that Mr. Chopra (individually and as president of Akal Institute) commingled funds, spent funds for his or Akal Institute's own benefit, engaged in high-risk investment and trading decisions, caused investments to suffer substantial losses, and incurred significant tax liabilities. *Id.* at 6. As particularly relevant here, Private Client claims that Mr. Chopra's "initial conversion of Dr. Chopra's funds . . . and the subsequent transfer of funds[] has caused Dr. Chopra to incur a tax liability that would otherwise not have been incurred in an amount to be proven at trial but no less than $5,000,000." *Id.* at 7.

Mr. Chopra moved to dismiss Private Client's complaint for lack of subject matter jurisdiction and failure to state a claim. Dkt. No. 15 at 1–2; *see* Fed. R. Civ. P. 12(b)(1), (b)(6).

## II.   DISCUSSION

The Court first considers Mr. Chopra's Rule 12(b)(1) challenge because his Rule 12(b)(6) challenge "will become moot if the court lacks subject matter jurisdiction." *Sager v. McHugh*, 942 F. Supp. 2d 1137, 1141 (W.D. Wash. 2013).[2]

---

[2] Mr. Chopra's motion to dismiss violates Section I.B.1.c of the Court's Standing Order for All Civil Cases because it does not contain a certification of conferral. *See* Dkt. No. 19 at 2 n.1. After Private Client filed its opposition brief noting this deficiency, the parties attempted to effectuate a post-hoc waiver of the conferral requirement so that Mr. Chopra did not have to withdraw and re-file his motion to dismiss with a proper certification. Dkt. No. 22. The Court denied the parties' stipulated waiver and re-noted Mr. Chopra's motion to dismiss. Dkt. No. 23. This was not, however, an invitation for Private Client to file yet another response and "supplemental" declaration. Parties are not entitled to additional briefing without leave of court. The Court accordingly STRIKES Private Client's second response and the accompanying declaration. Dkt. Nos. 25–26.

A.     **Rule 12(b)(1) Motion – Subject Matter Jurisdiction**

There are two types of Rule 12(b)(1) jurisdictional attacks: facial and factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Mr. Chopra "brings a facial challenge" to the complaint. Dkt. No. 15 at 5. "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). The Court's inquiry is confined to the allegations in the complaint. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).[3]

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A district court is thus "presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes of the Coleville Rsrv.*, 873 F.2d 1221, 1225 (9th Cir. 1989). The party asserting jurisdiction has the burden of establishing it. *United States v. Orr Water Ditch Co.*, 600 F.3d 1152, 1157 (9th Cir. 2010). Relevant here is 28 U.S.C.

---

[3] Private Client overlooks this critical distinction between surviving a facial versus factual attack by submitting several declarations in support of its amount-in-controversy allegations. *See* Dkt. No. 19-1, 19-2, 20, 21, 26. In response, Mr. Chopra emphasizes that his motion to dismiss is a facial challenge and accordingly urges the Court to exclude these declarations and confine its review to the face of the complaint. *See* Dkt. No. 24 at 5–6. The Court does not consider the declarations. *See, e.g.*, *Fish Nw. v. Thom*, No. C21-570-TSZ, 2021 WL 4744768, at *4 (W.D. Wash. Oct. 12, 2021) (declining to examine plaintiff's supporting declarations where defendants raised a facial challenge); *Ctr. for Biological Diversity v. Bernhardt*, No. 19-CV-05206-JST, 2020 WL 4188091, at *5 n.4 (N.D. Cal. May 18, 2020) (same).

ORDER GRANTING IN PART AND DENYING IN PART PHAM CHOPRA'S MOTION TO DISMISS - 4

§ 1332(a)(1), which grants district courts "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" Mr. Chopra targets both statutory requirements.

    1.    <u>Complete Diversity</u>

Mr. Chopra first contends that Private Client has failed to sufficiently plead Akal Institute's citizenship for purposes of complete diversity. Dkt. No. 15 at 2 n.2; *see Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005).[4] Because Private Client's response brief does not address this argument, *see generally* Dkt. No. 19, the Court ordered it to show cause why this case should not be dismissed for lack of subject matter jurisdiction, Dkt. No. 30 at 3. As the Court observed in its Order, Private Client failed to sufficiently allege its own principal place of business, Akal Institute's principal place of business, and the citizenship of Jane Doe Chopra. *See id.* at 2–3.

Private Client thereafter filed a timely response identifying its principal place of business as Washington. Dkt. No. 31 at 4. It also presented facts sufficient for the Court to conclude that Akal Institute's principal place of business is either Virginia or California. Indeed, Private Client's response demonstrates that it obtained all reasonably available information related to Akal Institute's principal place of business, and there is no reason to believe that it is a citizen of Washington. *Id.* at 2–4; *see Carolina Cas. Ins. Co. v. Team Equipment, Inc.*, 741 F.3d 1082, 1088 (9th Cir. 2014) ("[W]hen information regarding a defendant that is necessary to establish diversity of citizenship is not reasonably available to a plaintiff, the plaintiff should be permitted to plead jurisdictional allegations as to those defendants on information and belief and without

---

[4] The Court does not permit parties to advance substantive arguments in footnotes. Section IV.A of the Court's Standing Order for All Civil Cases (updated January 17, 2023) states that "[s]ubstantive information and discussion must appear in the body of the brief" because "footnotes are to be reserved for explanatory and supplemental information." This or materially similar language appeared in Section I.B.1(a) of the previous version of the Court's Standing Order, which was in effect at the time Mr. Chopra filed his motion to dismiss.

affirmatively asserting specific details regarding the citizenship of those defendants.").

The Court remains skeptical of Jane Doe Chopra's citizenship. An individual's state citizenship is "determined by her state of domicile, not her state of residence," and "[a] person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Private Client appears to suggest that Jane Doe Chopra is a citizen of California by nature of her marriage to Mr. Chopra: "The inclusion of Jane Doe Chopra in the Complaint is to provide for [the] unknown spouse of Defendant Pham Chopra and their marital community. It is established that Pham Chopra's citizenship is the State of California. Jane Doe Chopra's citizenship is the same." Dkt. No. 31 at 4. Although it may be (and perhaps likely is) true that Jane Doe Chopra permanently resides in California with Mr. Chopra and has every intent of staying there, that is not necessarily true. Private Client's conclusory reliance on the Chopras' marital status to establish Jane Doe Chopra's citizenship is accordingly misguided.

This is but one example of why the Ninth Circuit generally disfavors "Doe" pleading. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *see also Fifty Assocs. v. Prudential Ins. Co. of Am.*, 446 F.2d 1187, 1191 (9th Cir. 1970) (the proper course of action is to later add the party pursuant to Federal Rule of Civil Procedure 15(c)). "However, situations arise . . . where the identity of alleged defendants will not be known prior to the filing of a complaint." *Gillespie*, 629 F.2d at 642. In those circumstances, "the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Id.*; *but see Corrigan v. King Cnty. Deputy #1*, No. C05-1727P, 2006 WL 2222331, at *3 (W.D. Wash. Aug. 2, 2006) (a complaint will be dismissed when a reasonable inquiry would have revealed the defendant's identity). Similarly, a district court should permit discovery when "jurisdictional facts are

contested or more facts are needed" to definitively establish jurisdiction. *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). That is the case here. As Private Client asserts in its response, the complaint names Jane Doe Chopra solely to "provide for [the] unknown spouse of Defendant Pham Chopra and their marital community," and "[t]he existence of Jane Doe Chopra shall be confirmed during discovery." Dkt. No. 31 at 4. The Court is satisfied that complete diversity exists at this juncture. Should discovery yield information indicating that Jane Doe Chopra—assuming she exists—is domiciled in Washington, this case will be dismissed. *See* Fed. R. Civ. P. 12(h)(3).

### 2. Amount in Controversy

Mr. Chopra next argues that Private Client's allegations, even taken as true, fail to show that the amount in controversy exceeds $75,000. Dkt. No. 15 at 2, 7. According to Mr. Chopra, dismissal under the legal certainty test is appropriate because "the facts as alleged in the complaint fail to show a basis for any cognizable damages, much less the potential for damages in excess of the jurisdictional amount." *Id.* at 7. He points to the fact that he "returned more than twice the amount that was removed after approximately 30 months, producing an annualized return on investment in excess of 30 [percent]—a fantastic return by any measure." *Id.*; *see also id.* at 3 ("Added together, . . . Defendants transferred $23,598,340.[3]9 *out of* Dr. Chopra's accounts, and . . . *returned* $50,564,890.90 back to Dr. Chopra—representing a gain of nearly $27 million in well under three years."); Dkt. No. 24 at 4–5 ("Where, as here, the alleged tortfeasor has put the plaintiff in a *better* position than if there had been no breach, there are no damages and therefore no cause of action.").

Mr. Chopra further attacks the complaint for "baldly contend[ing that] this impressive return caused Dr. Chopra to incur a tax liability of $5 million or more[.]" Dkt. No. 15 at 7. He urges the Court not to credit this allegation "because it represents a legal conclusion and because

the facts are insufficient to show that this tax liability did not result from the enormous gains to Dr. Chopra—i.e., an amount necessarily subtracted by operation of law from a windfall in the form of extremely high gains, which cannot be attributed as damages to Dr. Chopra." *Id.* at 8 ("Mr. Chopra returned to Dr. Chopra millions more than what the complaint alleges he took, in excess of the alleged tax liability."). Private Client counters that Mr. Chopra's defenses, "including that any tax liability can be set-off by returns on the[] investments," cannot be considered or adjudicated on a jurisdictional challenge. Dkt. No. 19 at 5 ("The existence of a meritorious defense which may ultimately limit the plaintiff's recovery does not deprive a federal court of jurisdiction.").

"In a diversity case originally filed in federal court, the sum claimed in the complaint controls if the claim is apparently made in good faith. It must appear *to a legal certainty* that the claim is really for less than the jurisdictional amount to justify dismissal." *Maine Cmty. Health Options v. Albertsons Companies, Inc.*, 993 F.3d 720, 723 (9th Cir. 2021) (emphasis in original) (cleaned up). The "legal certainty" test permits a district court to dismiss the case for lack of jurisdiction only if it is obvious on the face of the complaint that the suit cannot involve the necessary amount. *Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010). This standard "makes it very difficult to secure a dismissal of a case on the ground that it does not appear to satisfy the jurisdictional amount requirement." *Naffe v. Frey*, 789 F.3d 1030, 1040 (9th Cir. 2015) (cleaned up). Indeed, just three situations meet the legal certainty standard: (1) "when the terms of a contract limit the plaintiff's possible recovery"; (2) "when a specific rule of law or measure of damages limits the amount of damages recoverable"; and (3) "when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction." *Id.* (cleaned up).

Mr. Chopra suggests that this case implicates the second scenario. *See* Dkt. No. 15 at 6. In

such circumstances, the rule of law or limitation on damages must "make it virtually impossible for a plaintiff to meet the amount-in-controversy requirement" for the legal certainty test to be satisfied. *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 364 (9th Cir. 1986) (observing that this will occur in only a "few cases"). Mr. Chopra cites no such law or limitation. Although he disavows any set-off defense and reframes his argument in terms of pleading standards,[5] this approach conflates failure to plead damages with ultimate recovery. His argument is really a thinly-veiled attempt to do what the Ninth Circuit has repeatedly prohibited: "smuggle in merits-based arguments into the jurisdictional inquiry[.]" *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 (9th Cir. 2020); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 928 (9th Cir. 2019) ("[T]he strength of any defenses indicates the *likelihood* of the plaintiff prevailing; it is irrelevant to determining the amount that is at stake in the litigation."); *Geographic Expeditions*, 599 F.3d at 1108 (the existence of a valid defense to a claim "does not eliminate federal jurisdiction[.]"). After all, "just because a defendant might have a valid defense that will reduce recovery to below the jurisdictional amount does not mean that the defendant will ultimately prevail on that defense." *Geographic Expeditions*, 599 F.3d at 1108. The dangers of treading down the merits path are self-evident. In the words of the Ninth Circuit, "if a district court had to evaluate every possible defense that could reduce recovery below the jurisdictional amount the district court would essentially have to decide the merits of the case before it could determine if it had subject matter jurisdiction." *Id.*

At base, Mr. Chopra advances a set-off argument. He suggests that the Court lacks jurisdiction because, once offset by the "return" from his high-risk investments (which he

---

[5] *See* Dkt. No. 24 at 4 ("The plaintiff misses the mark in characterizing this argument as raising a setoff defense."); *id.* ("This case does not raise the issue of a setoff. Instead, Mr. Chopra merely contends that the plaintiff must allege facts that, if credited, show the elements of its claim, *including damage*." (emphasis in original)).

ORDER GRANTING IN PART AND DENYING IN PART PHAM CHOPRA'S MOTION TO DISMISS - 9

transferred to Dr. Chopra's account), there are no damages, i.e., Dr. Chopra ended up with more money than what was taken—even accounting for any tax liability. That requires the Court to evaluate the merits of a defense that, *if successful*, might reduce recovery to below the jurisdictional amount. It is not the kind of rule of law or per se limitation on damages that the Court may go beyond the pleadings to apply. *See, e.g.*, *Pachinger*, 802 F.2d at 363–65 (state innkeeper statute limited hotel's liability to $750 and therefore defeated jurisdiction); *Tucker v. FCA US LLC*, No. 21-CV-2908-GW-MAAx, 2021 WL 3733243, at *3 (C.D. Cal. Aug. 23, 2021) (finding the amount in controversy was satisfied where plaintiff sought "'the entire contract price,' not 'the entire contract price – less payments made and an amount reflecting the valuation of their use or a mileage offset.'").

Private Client's complaint alleges that Dr. Chopra incurred a $5 million tax liability as a result of Mr. Chopra's breach of fiduciary duty. Specifically, and as already touched upon, he "engag[ed] in high-risk investment behaviors" with converted funds; "engaged in frequent trades in the accounts holding Dr. Chopra's funds"; took no steps to "hedge investments or create a balanced portfolio with lower risk investments"; failed to manage the assets as a prudent investor would; failed to diversify the assets "under the modern portfolio theory"; and invested in a way that "incurred significant suspended losses to investment value which created a substantial tax burden." Dkt. No. 1 at 7. Thus, this is not a case in which the plaintiff relies on a bald statement that "the amount in controversy exceeds $75,000," or one in which the complaint fails to provide "any specific information regarding the damages sought" or is "otherwise devoid of any factual basis for the assertion that the amount in controversy is met." *Homesite Ins. Co. of the Midwest v. Howell*, No. 2:21-CV-01389-JHC, 2022 WL 4315699, at *2 (W.D. Wash. Sept. 19, 2022). Instead, the parties dispute the cause and amount of Dr. Chopra's tax liability, *see* Dkt. No. 1 at 7; Dkt. No. 15 at 8; Dkt. No. 19 at 6, and it is entirely unclear at this juncture what the balance of Dr. Chopra's

account would have been absent Mr. Chopra's alleged wrongdoing. In other words, the court "would essentially have to decide the merits of the case before it could determine if it had subject matter jurisdiction." *Geographic Expeditions*, 599 F.3d at 1108.

Because it does not appear to a legal certainty that Private Client's claim is really for less than the jurisdictional amount of $75,000.01, Mr. Chopra's Rule 12(b)(1) motion is denied.

**B.      Rule 12(b)(6) Motion – Failure to State a Claim**

The Court next turns to Mr. Chopra's Rule 12(b)(6) challenge. Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). At this stage, the Court accepts as true all factual allegations in the complaint and construes them in the light most favorable to the nonmoving party. *Gonzalez v. Google LLC*, 2 F.4th 871, 885 (9th Cir. 2021). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed. R. Civ. P. 8(a)(2) (a plaintiff must make a "short and plain statement of the claim showing that the pleader is entitled to relief"). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Mr. Chopra reasserts, with a slight variation, his lack-of-damages argument: "[B]ecause damages are a requisite element of each cause of action brought by the plaintiff, and because the complaint fails to allege facts sufficient to establish recoverable damages, the complaint further fails to state a claim for which relief can be granted[.]" Dkt. No. 15 at 2; *see also* Dkt. No. 24 at 11–12 ("In the alternative, because the complaint fails to state a claim for which relief can be granted for failure to allege any cognizable damages, dismissal is also warranted under Rule

12(b)(6)."). This argument is doomed for the same reason it was doomed above. That Private Client's final recovery may ultimately be offset to some degree (perhaps even completely) does not mean that it has failed to plead damages or that it cannot establish damages as a matter of law. Put differently, Mr. Chopra's post-hoc disgorgement of investment returns does not mean that his alleged breach of fiduciary duty and conversion of funds never injured or damaged Dr. Chopra's estate. There is a distinction between pleading damages and a final reduction of those damages if Mr. Chopra successfully asserts an offset defense.

Although Mr. Chopra does not otherwise challenge the sufficiency of the complaint with respect to the remaining elements of Private Client's claims, the Court addresses them pursuant to its sua sponte authority. *See Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim sua sponte under Fed. R. Civ. P. 12(b)(6). Such a dismissal may be made without notice where the claimant cannot possibly win relief.").

    1.    <u>Breach of Fiduciary Duty and Conversion</u>

Private Client pleads facts that, if true, establish the elements of breach of fiduciary duty. A claim for breach of fiduciary duty requires a plaintiff to prove "(1) existence of a duty owed, (2) breach of that duty, (3) resulting injury, and (4) that the claimed breach proximately caused the injury." *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 40 P.3d 1206, 1217 (Wash. Ct. App. 2002). With respect to the first element, Mr. Chopra owed a fiduciary duty to Dr. Chopra and her estate as attorney-in-fact. *See In re Estate of Palmer*, 187 P.3d 758, 765 (Wash. Ct. App. 2008) ("An attorney-in-fact is . . . a fiduciary who is bound to act with the utmost good faith and loyalty[.]"). Second, his spending of Dr. Chopra's funds for personal benefit, transferring of Dr. Chopra's funds to his account and that of Akal Institute for personal benefit, and commingling of Dr. Chopra's funds with his own and those of Akal Institute for personal benefit all constitute breaches of fiduciary duty. *See Bryant v. Bryant*, 882 P.2d 169, 172 (Wash. 1994) ("Any use of

the principal's property in a manner inconsistent with the principal's instruction is a breach of the fiduciary duty."); *In re Marriage of Petrie*, 19 P.3d 443, 447 (2001), *as amended* (Apr. 10, 2001) ("commingling of funds and purchasing of personal assets with custodial funds are a form of self-dealing" that violates a trustee's duty of loyalty to the beneficiary, even when it results in a net benefit to the beneficiary). And last, the resulting $5 million tax liability and suspended losses to investment value demonstrate injury and causation. Private Client's claim for breach of fiduciary duty is sufficient to survive the dismissal stage.

2. Conversion

The same is true for Private Client's conversion claim. Conversion requires proof of three elements: "(1) willful interference with chattel belonging to the plaintiff, (2) by either taking or unlawful retention, and (3) thereby depriving the owner of possession." *Burton v. City of Spokane*, 482 P.3d 968, 970 (Wash. Ct. App. 2021). All three elements are met here. Assuming the truth of the allegations in the complaint, Mr. Chopra willfully interfered with Dr. Chopra's assets by taking and retaining them for the benefit of himself and Akal Institute, conduct that necessarily deprived Dr. Chopra and her estate of those assets. *See Consulting Overseas Mgmt., Ltd. v. Shtikel*, 18 P.3d 1144, 1147 (Wash. Ct. App. 2001) (money can be the subject of conversion if the defendant wrongfully received money or had an obligation to return it to the claiming party); *In re Marriage of Langham and Kolde*, 106 P.3d 212, 218 (Wash. 2005) (stock options can be the subject of conversion). This claim is sufficient to survive the dismissal stage.

3. Unjust Enrichment

The Court concludes otherwise with respect to Private Client's unjust enrichment claim. A plaintiff must establish three elements to sustain a claim for unjust enrichment: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such

circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value. *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008). As Mr. Chopra contends in his response brief, other than conclusory assertions that he and Akal Institute were "unjustly enriched," Dkt. No. 1 at 8, Private Client's complaint nowhere alleges that Mr. Chopra or Akal Institute "*continues* to retain any improper benefit," Dkt. No. 15 at 7. Therefore, the complaint fails to state a claim for unjust enrichment, and this claim is dismissed.[6]

Mr. Chopra's Rule 12(b)(6) motion is granted in part and denied in part.

### III.   CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Mr. Chopra's Motion to Dismiss. Dkt. No. 15.

Dated this 6th day of March, 2023.

Lauren King
United States District Judge

---

[6] In addition, the general rule is that a party to a valid, express contract cannot bring an unjust enrichment claim (i.e., an equitable, quasi-contract theory of recovery) based on subject matter governed by that contract. *Pierce Cnty. v. State*, 185 P.3d 594, 618 (Wash. Ct. App. 2008); *accord Pengbao Xiao v. Feast Buffet, Inc.*, 387 F. Supp. 3d 1181, 1191 (W.D. Wash. 2019) ("Where a valid contract governs the rights and obligations of the parties, unjust enrichment does not apply."). The parties have not addressed whether the Durable Power of Attorney bars Private Client's unjust enrichment claim, and the Court need not reach this issue given Private Client's failure to adequately plead the elements of unjust enrichment.