1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PRIVATE CLIENT FIDUCIARY CORPORATION, a Washington Corporation, as Guardian and Conservator of JOGINDER CHOPRA, M.D., an Incapacitated Person,<br><br>                    Plaintiff,<br>          v.<br><br>PHAM SINGH CHOPRA, et al.,<br><br>                    Defendants. | CASE NO. 22-CV-00436-LK<br><br>ORDER DENYING STAY AND PROTECTIVE ORDER |

This matter comes before the Court on Defendant Pham Singh Chopra's Motion for a Stay of Discovery and, in the Alternative, a Protective Order. Dkt. No. 34. The Court finds that a stay of this action is unwarranted. Nor do Mr. Chopra's generalized concerns about his Fifth Amendment privilege supply the specific examples and articulated reasoning necessary to justify a protective order. The motion is denied.

# I.   BACKGROUND

The Court set forth the relevant factual background in its March 6, 2023 Amended Order Granting in Part and Denying in Part Pham Chopra's Motion to Dismiss. Dkt. No. 53 at 1–3. Although the Court fully incorporates those facts, it summarizes some of them here for ease of reference.

In June 2016, Dr. Joginder Chopra appointed Mr. Chopra (her brother) to serve as her attorney-in-fact through a general durable power of attorney. Dkt. No. 1 at 3; *see id.* at 11–30 (executed power of attorney). This document vested Mr. Chopra with authority to make investments, sell existing investments, and otherwise buy, exchange, and sell securities, stocks, and financial instruments on behalf of Dr. Chopra's estate. *Id.* at 14, 16. Shortly after executing the power of attorney, Dr. Chopra began a "steep and continuous cognitive decline[.]" *Id.* at 3; *see also* Dkt. No. 42 at 2 (describing 90-year-old Dr. Chopra's condition). Mr. Chopra meanwhile initiated multiple transfers of cash and stock from Dr. Chopra's Fidelity account to his personal account and to that of Akal Institute between January and February 2019. Dkt. No. 1 at 3–4.

Mr. Chopra resigned as attorney-in-fact in October 2020 after Adult Protective Services investigated allegations against him for financial exploitation of Dr. Chopra. *Id.* at 4; *see id.* at 32–33 (resignation). And in August 2021, the King County Superior Court appointed Private Client Fiduciary Corporation to serve as guardian of Dr. Chopra and her estate. *Id.* at 4; *see also* Dkt. No. 36-1 (Adult Protective Services' May 2021 petition for appointment of guardian). The superior court further ordered Mr. Chopra to return to Private Client all funds from his personal Fidelity account and that of Akal Institute. Dkt. No. 1 at 4.

The King County Prosecutor's Office opened a criminal investigation into Mr. Chopra's alleged financial exploitation of Dr. Chopra. In May 2021, Mr. Chopra's attorney in the conservatorship proceedings, Neil Sarles, spoke with a King County detective who was

"investigating the filing of a criminal case against Mr. Chopra." Dkt. No. 37 at 2. This detective indicated that "the prosecutor's office was having a financial expert review the relevant bank accounts" and suggested contacting the deputy prosecuting attorney assigned to the case, Page Ulrey. *Id.* Between May and October 2021, Mr. Sarles and Mr. Chopra's criminal counsel, Michael Iaria, exchanged communications with Ms. Ulrey regarding the status of the criminal investigation against Mr. Chopra. *See generally* Dkt. No. 35 at 2 (Iaria declaration); Dkt. No. 37 at 2 (Sarles declaration). Ms. Ulrey made clear that her office's charging decision would turn, at least in part, on whether Dr. Chopra was (a) "made completely whole" and (b) "fully protected from any future manipulation or exploitation." Dkt. No. 37-1 at 2; *see also* Dkt. No. 37-2 at 2 ("[I]f there are tax consequences to [Dr. Chopra]'s estate as a result of your client's actions for which she is not compensated, we will obviously not consider her to have been made whole."). Mr. Sarles thereafter "continued to keep Ms. Ulrey updated" on Mr. Chopra's accounting efforts "and the assessment of tax issues by [Mr. Chopra's] experts." Dkt. No. 37 at 2–3. He also regularly sought updates on the status of the criminal investigation. *Id.* at 3.

In April 2022, Private Client sued Mr. Chopra and Akal Institute in federal district court for breach of fiduciary duty, unjust enrichment, and conversion. Dkt. No. 1 at 6–8. Mr. Chopra moved to dismiss Private Client's complaint. Dkt. No. 15. Although the Court agreed that Private Client failed to state a claim for unjust enrichment, it otherwise denied the motion. Dkt. No. 53 at 4–14. Meanwhile, and in response to his latest request for a status update, Ms. Ulrey emailed Mr. Sarles in early January 2023 stating that her office was "not ready to make a decision on any aspect of the filing of charges[.]" Dkt. No. 37-3 at 2. She then emailed Mr. Sarles five days later to "clarify" that "while there has been a criminal investigation in this case, there is no current criminal investigation taking place." Dkt. No. 37-4 at 2. Ms. Ulrey further indicated that her office was "waiting for the outcome of the civil proceedings before . . . mak[ing] a filing decision." *Id.* ("If

1   we decide to file charges, it's likely [that] additional investigation will need to be conducted.").

2       Mr. Chopra moved to stay this case pending the conclusion of the criminal investigation

3   or, alternatively, for a protective order staying all discovery from him personally. *See* Dkt. No. 34

4   at 1, 5, 11. After the motion was fully briefed, Ms. Ulrey informed Mr. Sarles that the State had

5   officially declined to charge Mr. Chopra. Dkt. No. 50-1 at 2. Nor, according to Ms. Ulrey, is the

6   United States Attorney's Office interested in Mr. Chopra's case. *See* Dkt. No. 51-1 at 2 ("I have

7   spoken with the U.S. Attorney's Office, and they indicated they weren't interested in this case. I

8   haven't heard anything about a federal investigation."). Ms. Ulrey likewise apprised Private

9   Client's counsel of the State's charging decision. Dkt. No. 43-1 at 2. Although the county

10  prosecutor's office originally intended to "hold off on making a filing decision" until these civil

11  proceedings concluded, it decided "to simply decline the case" due to unspecified "concerns"

12  expressed by Private Client's counsel. *Id.*

## II.   DISCUSSION

14      The Court begins by addressing Mr. Chopra's stay request. It then explains why he is not

15  entitled to a protective order.

16  **A.   Motion to Stay Discovery**

17      Mr. Chopra argues that this case should be stayed pending the conclusion of the criminal

18  investigation against him because he will otherwise have to choose between (1) asserting his Fifth

19  Amendment rights, which would lead to negative inferences and adversely impact his ability to

20  defend this civil action, and (2) waiving those rights and therefore losing an important

21  constitutional protection if he is indicted on criminal charges. Dkt. No. 34 at 5–6. He believes that

22  the county prosecutor's office is "closely monitoring these civil proceedings" and effectively using

23  this case "as discovery in its criminal investigation and/or criminal case[.]" *Id.* at 5. Mr. Chopra is

24  not entitled to a stay.

1. Legal Standard

The Constitution generally does not require a stay of civil proceedings pending the outcome of a parallel criminal case. *Keating v. Off. Of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995); *accord Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989). "In the absence of substantial prejudice to the rights of the parties involved, simultaneous parallel civil and criminal proceedings are unobjectionable under our jurisprudence." *Keating*, 45 F.3d at 324 (cleaned up). This is because a total stay of civil discovery pending the outcome of related criminal matters "is an extraordinary remedy appropriate for extraordinary circumstances." *Weil v. Markowitz*, 829 F.2d 166, 174 n.17 (D.C. Cir. 1987); *accord Whitsitt v. Allen & Assocs., LLC*, No. C13-1133-JCC, 2014 WL 11997865, at *2 (W.D. Wash. Mar. 27, 2014). Thus, although a district court has broad discretion to stay proceedings, the moving party bears a heavy burden in demonstrating that a stay is warranted. *Clinton v. Jones*, 520 U.S. 681, 706, 708 (1997); *Grassmueck v. Zhou Yan*, No. C17-0794-JLR, 2017 WL 3189035, at *2 (W.D. Wash. July 27, 2017).

In determining whether to stay a civil action in the face of parallel criminal proceedings, a district court must evaluate "the particular circumstances and competing interests involved in the case." *Molinaro*, 889 F.2d at 902. The factors relevant to this inquiry include (1) the extent to which the defendant's fifth amendment rights are implicated; (2) the plaintiff's interest in proceeding expeditiously with the civil litigation, and the potential prejudice to the plaintiff from delay; (3) the burden imposed on the defendants; (4) judicial economy; (5) non-party interests; and (6) the public's interest in the pending civil and criminal proceedings. *Keating*, 45 F.3d at 324–25; *Molinaro*, 889 F.2d at 902–903. Although the potential impact on the defendant's privilege against self-incrimination is a "significant factor" in the stay calculus, "it is only one consideration to be weighed against others." *Keating*, 45 F.3d at 326.

2.  <u>Analysis of the *Keating*/*Molinaro* Factors</u>

None of these factors weigh in Mr. Chopra's favor. As discussed below, his Fifth Amendment concerns are far too tenuous to justify the extraordinary remedy of an indeterminate stay, especially when those speculative fears are weighed against Private Client's interest (and, by extension, that of Dr. Chopra's estate) in expeditious resolution of this civil action. The Court accordingly declines to stay discovery.

*(a) Extent to Which Mr. Chopra's Fifth Amendment Privilege is Implicated*

Mr. Chopra argues that the criminal investigation and potential criminal case "severely interfere[] with [his] ability to defend against this civil action, as he cannot testify or defend himself against [Private Client]'s allegations without waiving his Fifth Amendment rights[.]" Dkt. No. 34 at 6. Permitting this case to proceed, he contends, will force him to choose between asserting his constitutional right, thereby inviting an adverse inference against him in this civil case, or waiving that right, thereby risking criminal liability down the line. *Id.*

The Fifth Amendment privilege against self-incrimination "protects an individual from being forced to provide information that might establish a direct link in a chain of evidence leading to his conviction." *United States v. Stringer*, 535 F.3d 929, 938 (9th Cir. 2008). There is not, however, an "absolute right not to be forced to choose between testifying in a civil matter and asserting [one's] Fifth Amendment privilege." *Keating*, 45 F.3d at 326. Parallel criminal and civil proceedings are thus permissible even when such proceedings necessitate invocation of the defendant's Fifth Amendment privilege. *Id.* And that remains true even when the trier of fact is permitted to draw adverse inferences in the civil case as a result of the defendant's assertion of the privilege. *Id.*

But the catch-22 Mr. Chopra prophesies has little chance of materializing. As noted above, there is no ongoing criminal investigation against Mr. Chopra; the State definitively declined to

1   file criminal charges against him and the federal government has no interest in his case. *See*

2   *Molinaro*, 889 F.2d at 903 ("The case for staying civil proceedings is a far weaker one when no

3   indictment has been returned, and no Fifth Amendment privilege is threatened." (cleaned up)). Mr.

4   Chopra nonetheless suggests that Ms. Ulrey's latest news changes nothing with respect his Fifth

5   Amendment rights because King County's decision to decline the case at this time does not

6   preclude future charges. Dkt. No. 46 at 3; Dkt. No. 49 at 2. He notes that prosecutors are closely

7   monitoring these proceedings and he could still be charged by the Attorney General. *Id.* Such a

8   risk, however, is far too attenuated at this juncture. That the specter of criminal prosecution still

9   haunts Mr. Chopra to some degree does not justify a stay. And the refusal of government

10  prosecutors to memorialize a promise does not change this outcome. *See, e.g.*, *S.E.C. v. Sandifur*,

11  No. C05-1631C, 2006 WL 1719920, at *2 (W.D. Wash. June 19, 2006) (noting that the

12  government's refusal to confirm that no indictment would issue did not prove that one would in

13  fact issue).

14      This first factor weighs against a stay.

15          *(b) Private Client's Interest in Proceeding Expeditiously and the Potential Prejudice
                from Delay*

16      As for the second factor, Mr. Chopra argues that any prejudice to Dr. Chopra's estate

17  "would be minimal" because he is requesting a stay "that will last only during the pendency of the

18  criminal investigation[.]" Dkt. No. 34 at 8–9. He also notes that Private Client "has yet to serve

19  *any* written discovery or note a single deposition" in the approximately one year that this case has

20  been pending. *Id.* at 9 (emphasis original). According to Mr. Chopra, this conduct "makes clear"

21  that Dr. Chopra's estate "is unlikely to suffer any prejudice[.]" *Id.* The Court disagrees on all

22  fronts.

23      Staying a case in its early stages and waiting for criminal proceedings to conclude may in

24

some circumstances reduce the amount of civil discovery needed, thereby promoting an expeditious resolution and conserving the plaintiff's resources. *Klein v. Kim*, No. 2:20-CV-01628-BJR, 2021 WL 5356717, at *2 (W.D. Wash. Nov. 17, 2021). Courts, however, generally find a plaintiff's interest prejudiced when a stay will cause a lengthy or indefinite delay. *United States v. Electron Hydro, LLC*, No. C20-1746-JCC, 2022 WL 594909, at *3 (W.D. Wash. Feb. 28, 2022); *see, e.g.*, *Clinton*, 520 U.S. at 707–708 (delaying trial increases the danger of prejudice "resulting from the loss of evidence, including the inability of witnesses to recall specific facts, and the possible death of a party"); *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007) ("[L]engthy and indefinite stays place a plaintiff effectively out of court" and "inherently increase[] the risk that witnesses' memories will fade and evidence will become stale" (cleaned up)); *CommScope, Inc. v. Electro Prods., Inc.*, No. CV-06-0577-RSM, 2007 WL 9775629, at *3 (W.D. Wash. Feb. 12, 2007) (plaintiffs would be prejudiced by negative consequences of delay, including witnesses relocating, fading memories, and the inability to seek vindication or redress for an indefinite period).

Mr. Chopra's suggestion that a stay would be limited in duration to the completion of the criminal investigation is a nonstarter. There is no criminal investigation to monitor. And, even if there were, it apparently would not conclude until *this* case does. Before declining to file charges outright, Ms. Ulrey indicated that her office was awaiting the outcome of the civil proceedings in order to ascertain the extent of any tax liability incurred by Dr. Chopra's estate, i.e., to determine whether Dr. Chopra was "made whole." Dkt. No. 37-2 at 2; Dkt. No. 37-4 at 2. And even assuming that granting a stay would prompt King County to complete an investigation, it is entirely unclear how long that investigation would take or whether it would result in criminal charges. Thus, the stay would be indefinite at best, causing untold prejudice to Private Client. *See Klein*, 2021 WL 5356717, at *3 (staying case indefinitely, without any indication that defendant would waive his

Fifth Amendment privilege in the near future, would prejudice plaintiff's ability to proceed to resolution expeditiously).

Similarly misplaced is Mr. Chopra's reliance on the lack of discovery in this case. The parties' erroneous belief that a pending dispositive motion excuses compliance with discovery obligations and other case deadlines is apparently to blame for this. Dkt. No. 54 at 2–3; *see White v. Skagit Bonded Collectors, LLC*, No. 2:21-CV-00697-LK, 2022 WL 508825, at *1 (W.D. Wash. Jan. 24, 2022). And because the Court recently dispensed with Mr. Chopra's motion to dismiss, discovery can now proceed unabated. Private Client's past discovery conduct, then, does not signify the absence of prejudice to Dr. Chopra's estate from additional delay—let alone an indefinite stay. The Court further notes that Dr. Chopra's geriatric infirmities magnify Private Client's interest in expeditious resolution of this litigation. *See Allen v. Nelson*, No. 2:21-CV-1097-BJR, 2022 WL 683209, at *2 (W.D. Wash. Mar. 8, 2022) (plaintiff with stage-five kidney disease had a "strong interest" in proceeding expeditiously with his case).

This factor also weighs against a stay.

### (c)  Burden Imposed on Mr. Chopra and Akal Institute

The same is true of the third factor. Here, Mr. Chopra repeats the arguments he advanced under the first factor. He again claims that forcing him to litigate this case now will place him in an "untenable situation" where he will be forced to make a Hobson's choice between inviting an adverse inference and waiving his Fifth Amendment privilege. Dkt. No. 34 at 9. Mr. Chopra fears that "documents or testimony unearthed during civil discovery [could] eventually inure to the benefit of a prosecution[.]" *Id.* These arguments fail for the reasons discussed above. The Court reemphasizes the remoteness and uncertainty concerning a possible future criminal indictment. Although there is potential for collaboration between prosecutors and Private Client, this is not a case in which the government is involved in both the civil and criminal proceedings. *See eBay,*

*Inc. v. Digit. Point Sols., Inc.*, No. C08-4052-JF(PVT), 2010 WL 702463, at *3 (N.D. Cal. Feb. 25, 2010) (private action presented less of a danger of prejudice to defendants than if the government were involved in both proceedings).

Mr. Chopra also briefly suggests that Akal Institute will be "severely prejudiced" if this case is not stayed. Dkt. No. 34 at 7. Although he acknowledges that a corporation may not invoke the Fifth Amendment, *see Braswell v. United States*, 487 U.S. 99, 102 (1988), he envisions a scenario in which he will be "unable to testify on behalf of Akal . . . without waiving his Fifth Amendment privilege." Dkt. No. 34 at 7; *see United States v. Kordel*, 397 U.S. 1, 7–8 (1970) (officers and agents are not barred from asserting their Fifth Amendment privilege to avoid incriminating themselves personally just because the corporation has no privilege of its own). Maybe so. But Mr. Chopra does not allege that Akal is a sole proprietorship or that he, as president, is the only executive, officer, or agent who can answer for Akal. *See In re Twelve Grand Jury Subpoenas*, 908 F.3d 525, 528 (9th Cir. 2018) (the right to resist compelled self-incrimination is a personal privilege applicable to individuals and sole proprietorships, "which do not, as a legal matter, exist separately from the individuals who comprise them"); *CommScope*, 2007 WL 9775629, at *3 (burden on corporate defendant was "particularly negligible" because defendants did not show or allege that no other individual aside from the defendant owner/president could answer for the corporation).

This factor accordingly weighs against a stay, too.

*(d) Judicial Economy*

Next, Mr. Chopra asserts that "this case involves total (or near total) overlap with the criminal investigation, and resolution of that investigation may influence this case and any potential settlement negotiations." Dkt. No. 34 at 8. He contends that a stay "would guard against duplicative judicial effort and streamline discovery in this action, particularly [because] this case

is in the early stages of litigation[.]" *Id.* at 9. Not so.

"To determine whether judicial economy favors staying a case, courts examine whether the proceedings 'arise out of the same event' and the 'potential for complexity, overlapping issues, duplicative rulings, and conflict between the rulings of this Court and the criminal court.'" *Electron Hydro*, 2022 WL 594909, at *3 (quoting *Lakey v. Washington*, No. 3:20-CV-05557-RBL-JRC, 2020 WL 8617405, at *3 (W.D. Wash. Sept. 15, 2020)). District courts, however, also have an interest in clearing their dockets and avoiding indeterminate delays. *Id.* This factor therefore normally does not weigh in favor of a stay. *Allen*, 2022 WL 683209, at *3. Such is the case here. As an initial matter, Mr. Chopra has not been indicted and the prospect of future criminal charges is remote. *See eBay*, 2010 WL 702463, at *6 (the extent to which common issues would have been resolved in a criminal proceeding was speculative without an indictment); *CommScope*, 2007 WL 9775629, at *4 ("The court has an interest in clearing its docket and in avoiding indefinite delays based only on a defendant's speculative Fifth Amendment concerns."). The risk of duplicative judicial effort is thus nonexistent. *See Grassmueck*, 2017 WL 3189035, at *3 (judicial economy factor weighed against a stay when there were no parallel criminal proceedings because there was no risk of duplication of judicial efforts, and any delay would have burdened the docket indefinitely).

And even assuming, without deciding, that any future criminal charges would in fact involve substantial overlap in terms of legal issues, the Court's interest in streamlining cases and clearing its docket outweighs the minimal risk of duplicative efforts down the line. *See Molinaro*, 889 F.2d at 903 (district court did not abuse its discretion in denying a stay where case had been pending for a year because it had an interest in clearing its docket); *Klein*, 2021 WL 5356717, at *3 (a district court has an interest in moving its cases along and ensuring that plaintiffs can pursue their claims; staying a case indefinitely runs contrary to that interest); *Commodity Futures Trading*

1  *Comm'n v. Fin. Tree*, No. 2:20-CV-01184-TLN-AC, 2021 WL 2681920, at *4 (E.D. Cal. June 30,

2  2021) (the requested stay would have thrust the Court into "an indefinite state of limbo" and

3  therefore "delay[ed] the administration of justice").

4      Considerations of judicial economy and convenience do not support the relief Mr. Chopra

5  seeks. This factor weighs against a stay.

6          *(e)  Interests of Non-Parties and the Public*

7      The final two factors likewise offer no support for a stay. With respect to non-party

8  interests, Mr. Chopra argues that this factor is neutral because "there are no known non-part[y]

9  witnesses in this case who may be in potential criminal jeopardy." Dkt. No. 34 at 10. Mr. Chopra

10  misapprehends the relevant inquiry: whether any non-party individuals or entities would be

11  prejudiced by an indefinite stay of this case. That no non-party witnesses are under criminal

12  investigation does not mean there are no non-parties with interests negatively impacted by the

13  requested stay. Private Client, however, does not identify any non-parties that would be prejudiced

14  by the stay. The Court therefore finds this factor neutral at best. *See, e.g.*, *Whitsitt*, 2014 WL

15  11997865, at *3 (interests of non-party individuals did not weigh heavily in either direction); *eBay*,

16  2010 WL 702463, at *6 (non-party interest was not relevant to analysis).[1]

17      In terms of the final factor, Mr. Chopra contends that the potential criminal case "is of

18  primary importance to the public, and the public's strongest interest is in ensuring the integrity of

19  the criminal proceeding." Dkt. No. 34 at 10. It is generally true that the public's interest in the

20

21  _____

[1] The Court notes that, according to Mr. Chopra's own allegations, two non-parties arguably have some interest in the

22  outcome of this civil action: the King County Prosecutor's Office and the Gates Foundation. Dkt. No. 34 at 5 (asserting that King County is "using these civil proceedings as discovery in its criminal investigation and/or criminal case[.]");

23  Dkt. No. 46 at 5–6 (suggesting that the Gates Foundation, as a beneficiary to Dr. Chopra's residual estate, has an interest in maintaining this action in the event of Dr. Chopra's death); *see Menster v. Liberty Mut. Fire Ins., Co.*, No.

24  C13-00775-RSL, 2013 WL 5770359, at *3 (W.D. Wash. Oct. 23, 2013) (Office of the Insurance Commissioner was a third party with an interest in the civil case because it had "an interest in finding the facts regarding plaintiff's claim" and "would likely benefit from civil discovery").

ORDER DENYING STAY AND PROTECTIVE ORDER - 12

1   integrity of a parallel criminal case takes precedence over the civil litigant's private interests. *L.C.*

2   *v. Gilbert*, No. C09-5586-BHS, 2010 WL 1641533, at *3 (W.D. Wash. Apr. 21, 2010). Here again,

3   though, Mr. Chopra overlooks the fact that there are no parallel criminal proceedings pending

4   against him. Nor is there an ongoing criminal investigation. Thus, proceeding with this civil action

5   will not undermine the integrity of a criminal investigation or any potential criminal action, and

6   resolution of this case "will best serve the interests of the public by 'ensuring that aggrieved parties

7   are made whole as rapidly as possible.'" *eBay*, 2010 WL 702463, at *6 (quoting *Starlight Int'l,*

8   *Inc. v. Herlihy*, No. 97-CV-2329-GTV, 1998 WL 560045, at *3 (D. Kan. Aug. 4, 1998)); *see also*

9   *Whitsitt*, 2014 WL 11997865, at *3 (the public's interest in speedy and efficient resolution of cases

10  involving alleged criminal conduct is "particularly strong").

11          In sum, at least five of the six *Keating*/*Molinaro* considerations weigh against a stay in this

12  case, while one factor (non-party interests) is neutral. Mr. Chopra has therefore failed to carry the

13  heavy burden of justifying a stay.

14  **B.      Motion for a Protective Order**

15          Mr. Chopra alternatively moves for a protective order staying all discovery from him. Dkt.

16  No. 34 at 11; *see Allen*, 2022 WL 683209, at *3 ("In effect, a request to stay discovery from a

17  party is a motion for a protective order under Federal Rule of Civil Procedure 26(c)."). [2] But his

18  conclusory assertions about a speculative future indictment do not shield him from discovery.

19          1. <u>Legal Standard</u>

20          Parties generally have the right to discover "any nonprivileged matter that is relevant to

21

22

23  ---

    [2] A party seeking a protective order must include with the motion "a certification that the movant has in good faith
    conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action."
    Fed. R. Civ. P. 26(c)(1); *see also* LCR 26(c)(1). A proper meet and confer "requires a face-to-face meeting or a
24  telephone conference." LCR 26(c)(1). Mr. Chopra's motion contains the requisite certification. *See* Dkt. No. 34 at 2;
    Dkt. No. 36 at 1–2.

1   any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).

2   The Court may, however, limit discovery "for good cause . . . to protect a party or person from

3   annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1).

4   Among other options, the Court may protect the resisting party by "forbidding the disclosure or

5   discovery" sought, "forbidding inquiry into certain matters, or limiting the scope of disclosure or

6   discovery to certain matters[.]" Fed. R. Civ. P. 26(c)(1)(A), (c)(1)(D). "Rule 26(c) confers broad

7   discretion on the trial court to decide when a protective order is appropriate and what degree of

8   protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

9        To establish good cause for a protective order, "the party seeking protection bears the

10  burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips*

11  *ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002). "Under the

12  liberal discovery principles of the Federal Rules, a party seeking a protective order carries a heavy

13  burden of showing why discovery should be denied." *Klopman-Baerselman v. Air & Liquid Sys.*

14  *Corp.*, No. 3:18-CV-05536-RJB, 2019 WL 5227332, at *2 (W.D. Wash. Oct. 16, 2019) (citing

15  *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). When a defendant seeks a partial

16  stay in light of a potential parallel criminal proceeding, the analysis of whether Defendants have

17  met their "heavy burden" under Rule 26(c) follows the framework set forth in *Keating. See*

18  *Vazquez v. Cnty. of San Bernardino*, No. EDCV-14-01753-JGB (MRWx), 2018 WL 6075347, at

19  *10 (C.D. Cal. Jan. 29, 2018).

20       2.  Analysis

21       Mr. Chopra's nebulous Fifth Amendment concerns are insufficient to warrant a protective

22  order. Aside from his failure to prevail under the *Keating* factors as discussed above, Mr. Chopra

23  fails to explain, with specific supporting examples, how or why his right against self-incrimination

24  is threatened by Private Client's discovery requests. Indeed, he claims that Private Client "has yet

to serve any written discovery or note a single deposition," Dkt. No. 34 at 9 (emphasis removed), meaning his request is not tethered to any specific discovery sought in this case. And as repeatedly noted above, there is no ongoing criminal investigation because the State has declined to prosecute Mr. Chopra. The Court therefore cannot find the particularized harm or prejudice necessary to justify a protective order. Nor can it balance the probative value of the specific information sought (to the extent any information has been sought) against Mr. Chopra's interests. The Court declines to issue a protective order.

### III.   CONCLUSION

The Court DENIES Mr. Chopra's Motion for a Stay of Discovery and, in the Alternative, a Protective Order. Dkt. No. 34. Mr. Chopra may renew his motion for a protective order if circumstances arise sufficient to provide the requisite good cause.

Dated this 17th day of April, 2023.

Lauren King
United States District Judge